**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **SAMUEL L. KEALOHA, JR.**, Defendant–Appellant

NO. 15520

(CASE NO. TRT3P:04/23/91)

MARCH 13, 1992

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE
HUDDY, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY BURNS, C.J.

Defendant Samuel L. Kealoha, Jr. (Kealoha) appeals the district court's April 24, 1991 judgment finding him guilty of the unauthorized overnight parking of his pickup truck at the Molokai airport on April 22, 1990 and sentencing him to pay a $25 fine. We affirm.

Kealoha contends that the district court reversibly erred when it (1) expressly concluded that his Hawai'i Revised Statutes (HRS) § 703–302 (1985) "choice of evils" defense applied to crimes but not violations and (2) failed to conclude that Kealoha's justification ("choice of evils") defense raised a reasonable doubt as to his guilt, HRS § 701–115(2)(A) (1985).

With respect to (1), the State correctly concedes that the "choice of evils" defense applies to violations. HRS §§ 703–301, 701–107(5), 701–107(7) (1985).

With respect to (2), Kealoha states that the question is

> [w]hether the Trial Court erred in failing to rule that [Kealoha's] knowing refusal to pay a parking violation appropriately constituted an appropriate act of conscience under the "choice of evils" defense set forth in Hawai'i Revised Statute Section 703–302, on the grounds that as a member of the community of Native Hawai'ians who are entitled to specific rights and entitlements pursuant to the Hawai'ian Homes Commission Act of 1920, as amended, and are also "beneficiaries" of lands which were originally "ceded lands" to be held for the benefit of descendants of the inhabitants of the Hawai'ian Islands at the time of its annexation by the specific language of the Joint Resolution of Annexation of Hawai'i, [Kealoha] was justified in symbolically refusing to make a small monetary payment as a result of his "violation" of the plenipotentiary power of the state (or its appropriately

delegated political subdivision) to make traffic rules as to Molokai) [sic] in light of the continuing breach of fiduciary duty by said state of these two covenants which constituted preconditions to the annexation of Hawai'i as a territory and subsequently the admission of the territory as part of the U. S.?

We note for the record that Kealoha was found guilty of unauthorized overnight parking and not for refusing to pay a fine imposed on him for unauthorized overnight parking. We also note that in his opening brief Kealoha stated that the reason he parked overnight was "that he missed a plane and could not depart from Hilo."

When the defendant introduces evidence of facts constituting justification, the State has the burden of disproving those facts beyond a reasonable doubt. *State v. McNulty*, 60 Haw. 259, 588 P.2d 438 (1978), *cert. denied*, 441 U.S. 961 (1979). The issue is whether Kealoha introduced evidence of facts constituting justification. We conclude that he did not.

The "necessity" or "choice of evils" justification defense is set forth in HRS § 703–302(1)(a) (1985). It specifies the following requirements:

(1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to himself or to another is justifiable provided that:

    (a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[.]

HRS § 703–300(1) (1985) states as follows: " 'Believes' means reasonably believes."

In *State v. Marley*, 54 Haw. 450, 509 P.2d 1095 (1973), the defendants had trespassed into Honeywell Corporation's Honolulu office in protest of Honeywell's actions related to the

Vietnam conflict. In a case charging them with criminal trespass they interposed, *inter alia*, the "necessity" or "choice of evils" defense. The supreme court stated:

> In essence, the "necessity" defense exonerates persons who commit a crime under the "pressure of circumstances," if the harm that would have resulted from compliance with the law would have significantly exceeded the harm actually resulting from the defendants' breach of the law. The defense is not effective in the following situations:
>
> (1) Where there is a third alternative available to to [sic] defendants that does not involve violation of the law, the defendants are not justified in violating the law. . . .
>
> (2) A closely related required element is that the harm to be prevented be imminent. . . .
>
> (3) Thirdly, and most importantly, . . . [defendant's] actions [must be] reasonably designed to actually prevent the threatened greater harm.

54 Haw. at 471–72, 509 P.2d at 1109.

Since the offenses in *Marley* predated the effective date of the Hawai'i Penal Code, HRS Title 37, of which HRS § 703–302 is a part, *Marley*'s analysis of the "necessity" or "choice of evils" defense was based on the common law. In our view, however, the *Marley* rationale is applicable in the construction of HRS § 703–302(1), (2).

In Kealoha's case, the harm or evil sought to be prevented by the law defining the offense charged was the unauthorized parking of an automobile in violation of HRS § 291C–111 (1985). Kealoha describes the harm or evil sought to be avoided by his unauthorized parking in the following terms:

[E]very Hawai'ian faces a choice not forced on other, consenting Americans — that the small daily decisions require decisions of assimilation or defiance.

\* \* \*

[Hawai'ians] truly feel that they are prisoners within their own sovereign land.

\* \* \*

Hawai'ians are the only people who America has denied the essential right to self–determination.

\* \* \*

During the territorial and statehood regimes, homelands were exchanged for state lands when such exchanges benefitted the purposes of the state. The required consent of congress was never obtained for these exchanges until these airports, including those at Hoolehua and Hilo[,] were fait accomplit [sic]. Congressional approval had been required for these exchanges and Congress had little choice but to so stamp its approval in one fell swoop for all such exchanges only recently.

\* \* \*

[T]he airport itself, its parking meters, and its parking tickets, are a daily challenge to Hawai'ians such as Mr. Kealoha — to accept without resistance the implications of a history that even Congress admits was a wrong to the Hawai'ian people, or to challenge, in the smallest ways, on a daily basis, those wrongs constantly reaffirm a chain of legal consequences that give credence to the wrong of the original taking.

In other words, Kealoha contends that he illegally parked his car overnight to protest the State's alleged breach of duty to the community of Native Hawai'ians.

Applying the HRS § 703–302(1)(a) and the *Marley* standards, we conclude that the "necessity" or "choice of evils" defense was unavailable to Kealoha under the circumstances of this case.

1. Kealoha did not reasonably believe that it was necessary to commit the crime to avoid an imminent harm or evil to himself or to others.

a. Other forms of noncriminal action were available to Kealoha regarding the State's alleged breach of duty to the community of Native Hawai'ians.

b. Kealoha's unauthorized parking was not reasonably designed to avoid the State's alleged breach of duty to the community of Native Hawai'ians. In other words, it was reasonably foreseeable that Kealoha's unauthorized parking would not stop or redress the historic harm or evil he asserts.

c. The alleged harm or evil sought to be avoided failed to meet the imminence test. *See State v. Bachman*, 61 Haw. 71, 595 P.2d 287 (1979); *State v. Horn*, 58 Haw. 252, 566 P.2d 1378 (1977). Kealoha admits that the State's alleged breach of duty to the community of Native Hawai'ians has been ongoing during the "territorial and statehood regimes" or, in other words, since the beginning of the twentieth century. An alleged harm or evil which has been ongoing for that many years is not an "imminent" harm or evil.

2. We need not decide whether the alleged harm or evil sought to be avoided was greater than the harm or evil generated by the crime committed.

Therefore, we conclude that the district court correctly ruled, although for the wrong reason, that the "necessity" or "choice of evils" defense was unavailable to Kealoha.

Accordingly, we affirm the district court's April 24, 1991 judgment finding defendant Samuel L. Kealoha, Jr. guilty of unauthorized overnight parking at the Molokai airport on April 22, 1990, and sentencing him to pay a $25 fine.

*Williamson B. C. Chang* and *Elizabeth Pa Martin* (Native Hawai'ian Advisory Council, Inc., of counsel) on the brief for defendant–appellant.

*James T. Carter*, Deputy Prosecuting Attorney, on the brief for plaintiff–appellee.